# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

TAMMY O. CANTU,                        )
                                       )
            Plaintiff,                 )
                                       )
v.                                     )        Case No. 11-CV-0515-CVE-TLW
                                       )
MICHAEL J. ASTRUE, Commissioner,       )
Social Security Administration,        )
                                       )
                                       )
            Defendant.                 )

## OPINION AND ORDER

On October 22, 2012, Magistrate Judge T. Lane Wilson entered a report and recommendation (Dkt. # 19) recommending that the Court affirm the decision of the Commissioner of the Social Security Administration to deny plaintiff's claim for disability benefits. Plaintiff has filed an objection to the report and recommendation, and she asks the Court to award benefits or remand the case for further administrative proceedings. Dkt. # 20.

### I.

On July 8, 2008, plaintiff filed an application for disability benefits, and she alleged that she was disabled as of November 29, 2007. Dkt. # 11-5, at 5. Plaintiff was 46 years old when the application was filed. She claimed that she was disabled due to brain surgery in 2001, "clip in head," migraine headaches, and high blood pressure. Dkt. # 11-6, at 3. She stated that she was able to work until November 2007 but she could no longer work due to migraine headaches. Id. Plaintiff's claim was initially denied on September 5, 2008, and she requested reconsideration of that decision. Dkt. # 11-4, at 2-5, 11. Plaintiff's claim was denied upon reconsideration and she requested a hearing before an administrative law judge (ALJ). Id. at 12-14, 17.

A hearing was held on November 13, 2009, and plaintiff was represented by counsel at the hearing. Dkt. # 11-2, at 30. Counsel made a brief opening statement and he advised the ALJ that plaintiff's primary impairments were "pain and vertigo with any kind of rapid motion," frequent headaches, and hypertension. Id. at 32. Plaintiff stated that she lived with her adult daughter and her highest level of education was a GED. Id. at 33. She worked as a certified nursing assistant until 2007, but her employment was terminated as a result of her frequent absences. Id. at 34-35. She explained that she was frequently unable to work due to severe pain behind her right eye, and she clarified that the eye pain was something different than the migraine headaches mentioned in her application for disability benefits. Id. at 35-36. She also complained of pain and dizziness caused by quick movements, and bending over would often lead to eye pain or headaches. Id. at 37. She had recently taken an elderly neighbor for an eye appointment. Id. During her neighbor's appointment, plaintiff asked the physician what the term "ischemia" meant, because she had seen the term in one of her own medical records. Id. The physician explained the term and gave plaintiff a referral to the Dean Eye Institute, but it does not appear that plaintiff actually sought treatment from the Dean Eye Institute. Id.

Plaintiff was not regularly visiting a doctor, because she had no health insurance and no means to pay a doctor. Id. at 38. She had a prescription for blood pressure medication, but she could not afford to fill the prescription. Id. Plaintiff claimed that she suffered from migraines about eight to fourteen times per year, and a typical migraine lasted three to four hours. Id. at 39. She again distinguished the migraine headaches as separate from the eye pain, but she claimed that both problems prevented her from leaving her home. Id. at 38-40. In a typical month, plaintiff stated that she could not leave her home about six days due to migraine headaches or eye pain. Id. at 40. When

asked to describe a typical day, plaintiff explained that she could perform some household chores, but bending and stooping, loud noises, or bright light trigger eye pain or a headache.  Id. at 41. Plaintiff stated she had an aneurism in 2001 and she was able to keep working until 2007, but eye pain and frequent migraine headaches prevented her from regularly attending work.  Id. at 43. Plaintiff claimed that she suffered from some memory loss and lack of attention span.  Id. According to plaintiff, she can sit for up to three hours without discomfort, but she can walk or stand no more than one hour at a time because of pain in her heel.  Id. at 44.  However, she clarified that the main cause preventing her from working was eye pain.  Id. at 45.

The ALJ heard the testimony of a vocational expert (VE), Angharad Young, Ed.D.  Young reviewed plaintiff's prior work experience as a habitation training specialist and a health care assistant, and described both jobs as generally requiring medium exertion, although the exertion level for a habitation training specialist would be light exertion as actually performed by plaintiff. Id. at 47-48.  The ALJ asked the VE if a hypothetical 45 year old claimant with a GED, the ability to read and write and use numbers, and who could perform the full range of light work could work as a habitation training specialist or health care assistant, and the VE responded that the claimant could not return to either job as generally performed.  Id. at 48.  There would be unskilled and sedentary work that the hypothetical claimant could perform.  Id. at 48-49.  Assuming that plaintiff's testimony was credible and that the ALJ found all of the limitations described by plaintiff, the VE stated that plaintiff could not return to her past relevant work.  Id. at 49.  Upon further questioning by plaintiff's attorney, the VE testified that a typical employer allows approximately one to two unscheduled absences per month.  Id. at 50.

3

On December 18, 2009, the ALJ issued a written decision denying plaintiff's claim for disability benefits. The ALJ found that plaintiff had severe impairments of post-aneurism repair and clip, migraine headaches, and vertigo. Id. at 18. However, the ALJ found that plaintiff's "complaint of eye pain is not reflected in the medical evidence of record and is thus a nonmedically determinable impairment." Id. The impairments found by the ALJ did not satisfy the severity requirements of any of the listed impairments under 20 C.F.R. Part 4, Appendix 1. Id. at 18-19. The ALJ determined that plaintiff had the residual functional capacity (RFC) to perform the full range of sedentary work. Id. at 19. After summarizing plaintiff's testimony, he found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." Id. at 21. He acknowledged plaintiff's complaints of migraine headaches but he stated that "it is reasonably well-known that high blood pressure can cause headaches." Id. The administrative record established that plaintiff had a prescription for blood pressure medication, but plaintiff claimed that she declined to take medication either because she could not afford it or the medication caused her to suffer from headaches. Id.

The ALJ appears to have given little weight to plaintiff's complaints of migraine headaches and eye pain when formulating plaintiff's RFC due to her failure to obtain medical treatment:

> The claimant contends that she has been unable to get medical care due to her lack of insurance and lack of income, but the claimant obtained the above-noted MRI and MRI (Exhibit 4f) through Morton Comprehensive Health Center, a clinic that provides medical care and treatment to low income, uninsured individuals. This is one of several low income health clinics in the area. Additional medical services and prescription medication programs are available for low income individuals, but these programs require that the claimant complete an application process. There is no evidence of record that shows that the claimant has availed herself of any of these

4

programs.  Nor is there evidence of follow up with healthcare providers at Morton Comprehensive Care Center after she obtained brain studies.

While the claimant complains that these headaches and eye pain are debilitating and disabling, she has made no apparent attempt to determine the cause, which may be something as simple as control of hypertension or removal of a sinus polyp or something severe and life threatening.  If the claimant was in constant pain as alleged, it is reasonable to assume the claimant would exhaust every means possible to obtain relief of that pain.  There are public facilities for those who do not have insurance or who are unable to pay for medical care.

Id. at 21-22.  He found little or no medical evidence supporting plaintiff's claims of migraine headaches and he stated that "even if the claimant were to obtain medication to address these symptoms, she would most likely not take prescribed medication." Id. at 22.  He also inferred that plaintiff's symptoms were not as severe as she claimed because she made few efforts to obtain medical treatment.  Id.  Plaintiff's daughter and Kay Fowler, a friend of plaintiff, submitted letters on plaintiff's behalf describing plaintiff's headaches, nausea, vomiting, and job loss, but the ALJ found these letters of little use when determining plaintiff's RFC.  The ALJ stated that the letters were "rather diffuse and not defined in a time-line," and the letters failed to explain whether plaintiff sought medical treatment available for low-income persons.  Id. at 22.  The ALJ found no objective medical evidence supporting plaintiff's claims of migraine headaches or eye pain, and it does not appear that he considered these impairments when formulating plaintiff's RFC.  Id. at 22-23.

The ALJ determined that plaintiff was unable to return to her past relevant work, because the jobs of habitation training specialist and health care assistant are generally performed at the medium level of exertion.  Id. at 23.  Based on his finding that plaintiff could perform the full range of sedentary work, the ALJ applied the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, and found that plaintiff was not disabled.  Considering plaintiff's age, education, and

work experience, a finding of not-disabled was required under Medical-Vocational Rule 201.28, and she was not disabled from November 29, 2007 through December 18, 2009.

Plaintiff appealed the ALJ's decision and the Social Security Administration Appeals Council agreed to consider additional evidence submitted by plaintiff.  Id. at 6.  The Appeals Council denied plaintiff's appeal.  Id. at 2.  Plaintiff filed a second application for disability benefits and, on December 13, 2011, the second application was granted.  Dkt. # 17-1.  Plaintiff was awarded monthly benefits to begin in December 2011 and she received past-due benefits dating back to May 2011.

On August 18, 2011, plaintiff filed this case seeking judicial review of the denial of her initial application for disability benefits.  She raised three arguments in her opening brief: (1) the ALJ failed to consider all of plaintiff's impairments at steps two and three; (2) the ALJ mistakenly applied the Medical-Vocational Guidelines at step five; and (3) the ALJ failed to perform an adequate credibility analysis of plaintiff.  Dkt. # 13, at 2.  The matter was referred to a magistrate judge for a report and recommendation, and he noted that plaintiff was asking the Court to consider her subsequent award of benefits as new evidence.  Dkt. # 16.  He directed plaintiff to submit "new and material evidence" in support of her request for a remand, and plaintiff submitted a copy of the award of benefits without any of the accompanying documentation that was reviewed by the Social Security Administration.  Dkt. # 17.  The magistrate judge entered a report and recommendation stating that the ALJ's decision should be affirmed.  Dkt. # 19.  Plaintiff has filed an objection (Dkt. # 20) to the report and recommendation, and defendant has not responded to the objection.

## II.

Without consent of the parties, the Court may refer any pretrial matter dispositive of a claim to a magistrate judge for a report and recommendation.  However, the parties may object to the magistrate judge's recommendation within 14 days of service of the recommendation.  Schrader v. Fred A. Ray, M.D., P.C., 296 F.3d 968, 975 (10th Cir. 2002); Vega v. Suthers, 195 F.3d 573, 579 (10th Cir. 1999).  The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  The Court may accept, reject, or modify the report and recommendation of the magistrate judge in whole or in part.  Fed. R. Civ. P. 72(b).

## III.

Plaintiff has filed an objection (Dkt. # 20) to the magistrate judge's report and recommendation and she reasserts the same arguments advanced in her opening brief before the magistrate judge.  She also argues that the case should be remanded for consideration of any additional evidence that was submitted with her second application for disability benefits.  Defendant has not filed a response to plaintiff's objection.

The Social Security Administration has established a five-step process to review claims for disability benefits. See 20 C.F.R. § 404.1520. The Tenth Circuit has outlined the five step process:

> Step one requires the agency to determine whether a claimant is "presently engaged in substantial gainful activity." [Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004)].  If not, the agency proceeds to consider, at step two, whether a claimant has "a medically severe impairment or impairments." *Id*.  An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities. *See* 20 C.F.R. § 404.1521.  At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation." *Allen*, 357 F.3d at 1142.  If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent her from performing her past relevant work. *See Id.*  Even if a claimant

7

is so impaired, the agency considers, at step five, whether she possesses the sufficient residual functional capability to perform other work in the national economy.  *See Id.*

Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  The ALJ decided this case at step five of the analysis. At step five, the ALJ must consider a claimant's RFC, age, education, and work experience to determine if other work exists that a claimant is able to perform.  Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988).  If the claimant can adjust to work outside of her past relevant work, the ALJ shall enter a finding that the claimant is not disabled. 42 U.S.C. § 423(d)(2)(A).  However, the ALJ must find that a claimant is disabled if insufficient work exists in the national economy for an individual with the claimant's RFC.  Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010).  The Commissioner bears the burden to present sufficient evidence to support a finding of not disabled at step five of the review process.  Emory v. Sullivan, 936 F.2d 1092, 1094 (10th Cir. 1991).

The ALJ issued a written decision that was reviewed by the Appeals Council, which is a final decision by an administrative agency.  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008). The Court may not reweigh the evidence or substitute its judgment for that of the ALJ but, instead, reviews the record to determine if the ALJ applied the correct legal standard and if her decision is supported by substantial evidence.  Id. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994).  "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004).  The Court must meticulously examine the record as a whole and consider any evidence that detracts from the Commissioner's decision. Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994).

Plaintiff's primary argument is that the ALJ failed to consider all of her impairments at steps two and three of the analysis. Dkt. # 20, at 1. She objects to the ALJ's characterization of her eye pain as a "nonmedically determinable impairment, and she claims that the ALJ ignored medical evidence showing that plaintiff suffered from hypertension and that she was obese. Id. at 2-3. Plaintiff further argues that this rendered the ALJ's determination of plaintiff's RFC unreliable because the ALJ failed to account for all of plaintiff's impairments when formulating the RFC. Id. at 4. Plaintiff's argument that the ALJ committed an error at step two is not supported by the law. Even if the Court were to assume that an error occurred at step two, this error would be harmless as long as the ALJ finds some severe impairment and continues with the analysis. Carpenter v. Astrue, 537 F.3d 1264, 1266 (10th Cir. 2008). As stated by the Tenth Circuit, the "real problem occurs later in the analysis, where the ALJ is required to consider the effect of all medically determinable impairments, severe or not, in calculating the claimant's RFC." Groberg v. Astrue, 415 Fed. App'x 65, 67 (10th Cir. Feb. 17, 2011).[1] To the extent that plaintiff is asserting an error at step two, the ALJ found that plaintiff suffered from at least one severe impairment and any failure to find additional severe impairments was harmless at step two. However, the Court will consider whether the ALJ erred by omitting any impairments when formulating plaintiff's RFC.

Much of plaintiff's testimony at the hearing before the ALJ concerned her eye pain, and she offered this as one of the most significant impairments that prevented her from working. However, the ALJ found that eye pain was a "nonmedically determinable impairment" and he did not find plaintiff's testimony concerning the severity of this impairment was wholly credible. Id. at 18, 21-

---

[1]     Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

22.  To qualify as a medically determinable impairment, the condition must "result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1507.  An impairment must be established using medical evidence and "not only by [the claimant's] statement of symptoms." Id.  Plaintiff claims that the ALJ ignored the statement of at least one treating physician that plaintiff suffered from right eye pain.  The medical records cited by plaintiff simply recite her own statements that she claimed to be suffering pain behind her right eye, and no treating physician found a medical cause for such eye pain.  Dkt. # 11-7, at 20, 27.  Plaintiff argues that she had a metallic clip placed in the right side of her head following an aneurism and the ALJ could reasonably have found this to be a cause of her eye pain.  Dkt. # 20, at 2.  While the ALJ could have made such a finding, the administrative record does not show that the ALJ was required to make this finding and the ALJ's determination that plaintiff's eye pain was a nonmedically determinable impairment is supported by substantial evidence.

Plaintiff argues that the ALJ ignored medical evidence that she suffered from hypertension and the ALJ impermissibly disregarded this evidence based on a perception that plaintiff refused to take blood pressure medication.  Dkt. # 20, at 3.  An ALJ is not permitted to disregard evidence of an impairment based only on his speculation that a claimant failed to follow a prescribed treatment.  Robinson v. Barnhart, 366 F.3d 1078, 1083-84 (10th Cir. 2004).  The ALJ may rely on noncompliance with treatment as a reason to deny benefits only when the ALJ specifically considers "(1) whether the treatment could restore the ability to work and (2) whether the claimant's failure to follow treatment is justifiable."  Tucker v. Barnhardt, 201 Fed. App'x 617, 622 (10th Cir. Oct.

19, 2006).[2]  Inability to afford medical treatment may be a justifiable reason for failing to take prescribed medication.  Id.  In this case, plaintiff's hypertension is documented in the medical records and hypertension was noted by the consultative examiner.  Dkt. # 11-7, at 13, 26, 28, 33-34. Plaintiff received a prescription for blood pressure medication and at least one physician noted that plaintiff was not taking her medication.  Id. at 33-34.  The ALJ noted that plaintiff gave two reasons for failing to take blood pressure.  First, plaintiff claimed that she stopped taking blood pressure medication because the medication caused her to suffer from migraine headaches.  Dkt. # 11-2, at 21.  Plaintiff also stated that she could not afford the medication.  Id.  The ALJ did not make a finding as to whether compliance with treatment would have permitted plaintiff to return to work. He also did not make a credibility finding as to plaintiff's claim that blood pressure medication caused her to suffer from headaches, but he extensively described the means for low income individuals to obtain healthcare and prescription medication and found that plaintiff did not take full advantage of these opportunities.  Id. at 21-22.

The Court has reviewed the ALJ's written decision and does not find that the ALJ made the appropriate findings under Robinson for noncompliance with treatment as to plaintiff's hypertension.  The ALJ did not make a finding that treatment of plaintiff's hypertension would permit her to return to work.  The ALJ questioned plaintiff's credibility because of her potentially conflicting reasons for not taking blood pressure medication.  However, it appears that the primary reason that the ALJ declined to treat hypertension as a severe impairment is that plaintiff did not make sufficient efforts to obtain medical care.  This conflicts with the ALJ's statement that plaintiff

---

[2]     Unpublished decisions are not precedential, but may be cited for their persuasive value.  See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

obtained treatment "through Morton Comprehensive Health Center, a clinic that provides medical care and treatment to low income, uninsured individuals." Dkt. # 11-2, at 21. It is apparent that plaintiff made some efforts to obtain medical treatment and, as the Tenth Circuit noted in Groberg, inability to afford treatment may be sufficient justification for refusing to comply with prescribed treatment. Groberg, 415 Fed. App'x at 67. The ALJ's failure to make the proper noncompliance findings is especially important in this case, because the ALJ speculated that plaintiff's migraine headaches could be caused by hypertension. Dkt. # 11-2, at 21. It appears that the ALJ discounted the severity of plaintiff's migraine headaches, in part, because he viewed the headaches as caused by plaintiff's failure to control her blood pressure medication. Id. There is no medical evidence in the record supporting such a link, and the ALJ may not supplement the record with his own medical conclusions. Without making the appropriate noncompliance findings, the ALJ could not disregard the evidence of plaintiff's hypertension and this calls into question the ALJ's subsequent finding that plaintiff's migraine headaches were less severe than described by plaintiff. The Court finds that this matter should be remanded for further proceedings based on this error.

The Court does not need to consider plaintiff's arguments concerning the ALJ's assessment of her credibility and the ALJ's application of the Medical-Vocational Guidelines. However, the Court will briefly consider plaintiff's argument that the magistrate judge erred by failing to consider the subsequent award of disability benefits to plaintiff, because this could have an impact on the proceedings on remand. Plaintiff argues that it is likely that the award of benefits was based on the same medical conditions at issue in this case and the subsequent award of benefits could affect the outcome in this case. The magistrate judge considered this argument, but he found that the administrative record contained no evidence showing what medical evidence was submitted to the

Commissioner with the second application and plaintiff had not met her burden to show that the subsequent award of benefits had any relevance to this case.  Dkt. # 19, at 12.  As the case is being remanded on other grounds, it is not necessary for the Court to provide an extensive analysis of this issue.  The Court does not know what evidence was submitted to the Social Security Administration with plaintiff's second application for disability benefits but, if this evidence has some relevance to plaintiff's initial application, it could be appropriate for the ALJ to consider the subsequent award of benefits.  See Luna v. Astrue, 623 F.3d 1032 (9th Cir. 2010).  That decision should be left to the ALJ in the first instance.

**IT IS THEREFORE ORDERED** that the report and recommendation (Dkt. # 19) is **rejected**, and the Commissioner's decision to deny plaintiff's claim for disability benefits is **reversed and remanded** for further proceedings.  A separate judgment is entered herewith.

**DATED** this 7th day of January, 2013.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

13